Eric M. Lightman (SBN 288791)
LAW OFFICES OF ERIC M. LIGHTMAN
1254 Mission St.
San Francisco, CA 94103
Telephone:  415-295-4777
Fax: 415-795-4750
eric.m.lightman@gmail.com

Attorney for Plaintiff,
TERRI WILSON

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI WILSON, an individual;<br><br>                Plaintiff,<br><br>    v.<br><br>LABORATORY CORPORATION OF<br>AMERICA, INC., a Delaware Corporation;<br>and DOES 1 – 50;<br><br>                Defendants. | Case No.  3-18-cv-4924<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF**<br><br>**1.  Failure to Provide and/or Authorize Rest and Meal Periods or Pay Rest and Meal Period Premium Wages in Violation of California Labor Code §§ 512 and 226.7, and IWC Wage Order(s);**<br><br>**2. Failure to Provide Itemized Wage Statements in Violation of California Labor Code § 226;**<br><br>**3.  Failure to Compensate for All Hours Worked in Violation of California Labor Code §§ 204, 223, and IWC Wage Order(s);**<br><br>**4. Failure to Pay Earned Wages Upon Discharge, Waiting Time Penalties in Violation of California Labor Code §§ 201-203;**<br><br>**5. Violation of Cal. Business and Professions Code § 17200, *et seq.***<br><br>**6. Civil Penalties Pursuant to Private Attorneys General Act of 2004, California Labor Code § 2698, *et seq.***<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    PRELIMINARY STATEMENT

1.    Plaintiff Terri Wilson ("Plaintiff" or WILSON") brings this action against her former employer Laboratory Corporation of America ("LABCORP") for violations of the California Labor Code.  The relief sought is to remedy LABCORP's failure to: provide rest or meal periods or pay rest or meal period premium wages, maintain accurate time records, as well as failing to correct all of the foregoing deficiencies and pay all wages due upon WILSON's termination, Private Attorney's General Act ("PAGA") penalties, restitutionary and injunctive relief.

## II.    PARTIES

2.    At all relevant times to this action, WILSON was a resident of the County of Alameda in the State of California. WILSON is a former employee of LABCORP where she worked as a phlebotomist in California beginning in or around October 25, 2013 until she was terminated on or around July 27, 2017.

3.    WILSON is informed and believes, and on that basis alleges, that LABCORP is a Delaware corporation doing business in California under entity number C0644716. LABCORP is a provider of clinical laboratory services, performing tests on nearly half a million patient specimens each day on behalf of managed care organizations, hospitals, doctors, government agencies, drug companies, and employers. Its services range from routine urinalyses, HIV tests, and Pap smears to specialty testing for diagnostic genetics, disease monitoring, forensics, identity, clinical drug trials, and allergies.

4.    Defendants Does 1 through 50 are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-Defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as

2

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

such agent, servant, partner, and employee, with the permission and consent of the co-Defendants (LABCORP and these Defendant Does shall be referred to collectively herein as "Defendants").

5.     WILSON is informed and believes and thereon alleges that at all times relevant herein, the individual Defendants were acting in their individual capacities as well as their capacities as employees, agents, managers, and officers of LABCORP.

## III.     JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S. Code § 1332 due to diversity of citizenship of the parties and because the amount of damages claimed by Plaintiff exceeds $75,000.

7.     This Court has personal jurisdiction over this matter because Defendants, presently and at all times relevant to this action, have conducted substantial and continuous commercial activities in the Northern District of California and because many of the acts complained of herein occurred in this District and gave rise to the claims herein alleged.

8.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims set forth herein occurred in this district. Venue is proper in this Court as a substantial part of the events or omissions giving rise to this action occurred in Alameda County, California, and because LABCORP conducts a significant amount of business in San Francisco and Alameda Counties, in California, including the operation of several of its laboratories and facilities.

## IV.     FACTUAL ALLEGATIONS

9.      WILSON began working as a "PST Specialist" for LABCORP in or around October 2013 at a LABCORP patient service center ("PSC") located in San Ramon, California. As a Patient Services Technician ("PST") Specialist, WILSON primarily engaged in the duties associated with a phlebotomist. These duties included collecting blood and urine samples from patients, preparing and processing these

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

samples for testing, and sending off samples with a courier each day for analysis.

10.     In or around October 2015, WILSON applied for, and was hired, to work at another LABCORP PST position located at the Castro Valley Patient Services Center ("CV PSC") located at 19942 Lake Chabot Rd, in Castro Valley, California (the "CV PST"). WILSON began working at this new position on or around October 24, 2015 and was performing essential the same duties at her previous position in San Ramon.

11.     WILSON worked as a non-exempt hourly employee for LABCORP, typically working Monday through Friday from 6:30 a.m. through 5:00 p.m., and occasionally on Saturday as needed. At all relevant times, the CV PST had posted hours of operation from 7:00 a.m. through 4:30 p.m. and a one-hour lunch break from 12:00 p.m. to 1:00 p.m. during which the facility was scheduled to close.

12.     During the majority of the time that WILSON worked at the CV PSC, she was one of two employees working at the site, the other being another PST like herself. The two PSTs were responsible for arriving at work before the site opening for business, starting up the computer systems, and preparing equipment and tools for the day's work. Once the site opened, typically one PST would sit at the front desk doing intake – welcoming each patient and then preparing that patient to have his or her sample drawn. The other PST was tasked with physically drawing the samples from the patients. WILSON and the other PST on duty would typically alternate throughout the day between working the front desk and drawing samples from patients.

13.     The CV PSC, like LABCORP's other PSCs, had a combination of two general kinds of patients: those who had appointments scheduled in advance, and those who did not ("walk-ins").

14.     Although the CV PSC was scheduled to close for a one-hour lunch period each day, WILSON and the other PST on duty often found it difficult to close the site at the posted times due to the high volume of patients they were seeing each day. More often than not, WILSON and the other PST on

duty found that it was not possible to take any lunch due to the high volume of patients that they were treating at the site. Frequently there would be a queue of scheduled patients and walk-ins at or near the beginning of the 12:00 p.m. lunch period, thereby preventing WILSON and the other PST from taking a lunch break.

15.    WILSON and the other on duty PST on duty also found it extremely difficult to take any rest periods during a shift at work, due to the high volume of scheduled and walk-in patients. More often than not, WILSON was unable any ten-minute rest periods whereby she would be relieved of all duties and responsibilities during a shift. Instead, she commonly worked straight through her shifts without taking these rest periods.

16.    During her employment with DEFENDANT, WILSON frequently complained to her supervisor about her inability to take a lunch break. In response to WILSON's complaints about not being able to breaks, her supervisor often informed her that they would try to find "coverage" for the CV PSC, meaning an additional employee who could assist with site duties so that WILSON could take lunch. More often than not, however, her supervisor was unable to find coverage for the site, and the result was that WILSON was unable to take regular lunch breaks.

17.    Early on while WILSON began working at the CV PSC, there were occasions when she and the other PST at the site were unable to clock out at or near the scheduled lunch break due to the high volume of patients they were serving. On some occasions, WILSON and the other PST worked through lunch without taking a break, so that they would be able to leave at a reasonable hour at the end of the day. In response to this, WILSON's supervisor told her and the pother PST to clock out for lunch, no matter what. Eduardo Martins ("Martins") was a supervisor who repeatedly told WILSON to clock out for lunch no matter what.

18.    Martins stressed to WILSON and the other PSTs that clocking out for lunch was

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

mandatory, regardless of what was happening at the CV PSC. WILSON and the other PST communicated to Martins that it was often impossible to clock out and close down the CV PSC during lunch due to the high volume of patients, and that this was the only reason they had not been clocking out during lunch. Martins said that he would get into trouble with his superiors if they did not clock out, and he directed them to do so no matter what, even if that meant continuing to work while off the clock. The message to WILSON was that she would get into trouble if she did not follow Martins's command to clock out, even if this meant she continued to work through her lunch.

19.    WILSON is informed and believes and thereon alleges that Defendant had a practice of failing to pay several of its employees at other facilities for missed rest and meal periods despite those employees being unable to take rest and meal periods due to work conditions and due to pressure from supervisors to clock out for lunch despite those employees continuing to work through lunch.

20.    WILSON is informed and believes and thereon alleges that Defendant had a practice of understaffing its PSCs and other facilities and advising its PSTs to treat all patients who walked through the door, no matter what time it was and no matter how close to a meal period the patient walked through the door. These two practices thereby placed undue pressure on employees to either forego their rest and meal periods in order to treat patients, or to clock out for meal periods and continuing to work for fear of being disciplined and/or terminated for turning away patients or failing to timely complete their work for the day.

21.    WILSON provided notice pursuant to California Labor Code § 2699.3, remitted to the Department of Industrial Relations a payment of $75, and on June 4, 2018, asked the California Labor and Workforce Development Agency if it intended to investigate alleged Labor Code violations, as set forth in the letter attached hereto as **Exhibit A**.

22.     Over thirty (30) days have passed since the postmark date of WILSON's letter to the California Labor Workforce Development Agency, and the Agency has not provided notice to WILSON regarding its intention to investigate the alleged violations. As such, pursuant to California Labor Code § 2699.3(a)(2)(A), WILSON has exhausted his notice requirement and seeks civil penalties under California Labor Code § 2698, *et seq.*

### FIRST CAUSE OF ACTION
#### Failure to Provide Rest and Meal Periods

23.     WILSON hereby re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

24.     Labor Code section 226.7 and 512 and Section 11(A) of Wage Order 4 provide that employers must provide employees who work more than six (6) hours per day with a thirty (30) minute meal period wherein the employee is relieved of all duties, and may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

25.     Labor Code section 226.7(b) and section 11(B) of Wage Order 4 provide that if an employer fails to provide an employee with a thirty (30) minute meal period, the employer shall pay the employee one hour of pay for each work day that a thirty (30) minute meal period was missed.

26.     Section 11 of Wage Order No. 4 provides (and at all times relevant hereto provided) in relevant part that:

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an ─on duty ‖

7

meal period and counted as time worked. An ―on duty ‖ meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time. (B) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

27.      Section 12 of Wage Order No. 4 provides (and at all times relevant hereto provided) in relevant part that:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

28.      California Labor Code § 226.7 prohibits any employer from requiring any employee to work during any meal or rest period mandated by an applicable IWC wage order, and provides that an employer that fails to provide an employee with a required rest break or meal period shall pay that employee one additional hour of pay at the employee's regular rate of compensation for each work day that the employer does not provide a compliant meal or rest period.

29.      Defendants did not, upon information and belief, obtain WILSON's or its other employees' written agreement to an on-the-job "on duty" meal period, and the nature of her work did not prohibit off-duty meal periods, had Defendants scheduled adequate coverage. Defendants did not authorize and permit WILSON to take several required thirty (30) minute meal periods during her employment with Defendants.

8

30.     Due to the understaffing at several PSCs, including the CV PSC, WILSON and other similarly situated employees were overworked and were unable to take several meal periods and rest periods. Often, WILSON worked through meal and rest periods due to the heavy workload without clocking out, and Defendant failed to pay WILSON rest or meal period premiums. On other occasions, WILSON's supervisor pressured her to clock regardless of the workload, aware that she continued working through lunch, and Defendant failed to pay her a meal period premium on these occasions. WILSON is informed and believes and thereon alleges that Defendant had a practice of denying its other employees their rest and meal period premiums in a similar fashion.

31.     As a result, Defendants denied WILSON and these other employees their meal and rest periods and also failed to pay them their missed meal and rest period premiums as required by law.

32.     As a direct and proximate result of Defendants' conduct as alleged above, WILSON and the other similarly affected employees have sustained damages in the amount of one hour of wages for each day WILSON missed her thirty (30) minute meal period, and one hour of wages for each day WILSON missed her ten (10) minute rest period.

33.     Plaintiff and these other similarly situated employees are therefore entitled to payment of the meal and rest period premiums as provided by law.  Additionally, pursuant to Code of Civil Procedure § 1021.5, Plaintiff, on behalf of herself and other similarly aggrieved individuals, is entitled to attorneys' fees and costs.

34.     Defendants knowingly and intentionally deprived WILSON of her rest and meal periods, and failed to take any action to properly compensate her for all entitled rest and meal penalties. Defendants had a policy and practice of understaffing several PSCs to the point where WILSON and several other similarly-situated employees could not take rest or meal breaks due to the high volume of work and by directing them to clock out, even if the employees had to continue working through lunch. In committing

the foregoing acts, Defendants were guilty of oppression, fraud, or malice, and, in addition to the actual damages caused thereby, WILSON is entitled to recover damages for the sake of example and by way of punishing Defendants.

## SECOND CAUSE OF ACTION

### Failure to Provide Accurate Itemized Wage Statements

35.     WILSON hereby re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

36.     California Labor Code § 226(a) provides that, at the time of each payment of wages, an employer shall provide each employee with a wage statement itemizing, among other things, the total hours worked by the employee in the pay period. California Labor Code § 226(e) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) may recover the greater of his or her actual damages or a penalty of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period (up to a maximum of $4,000), in addition to attorneys' fees and costs.

37.     Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter alia*, of hours worked, to WILSON and other similarly situated employees in accordance with Labor Code § 226(a).  Such failure caused injury to WILSON by, among other things, impeding her from knowing the total hours worked and the amount of wages to which she is and was entitled.  WILSON is therefore entitled to the damages and penalties provided for under Labor Code § 226(e). Additionally, pursuant to Code of Civil Procedure § 1021.5, *inter alia*, WILSON is entitled to attorneys' fees and costs.  Pursuant to Labor Code § 226(h), WILSON is also entitled to seek injunctive relief requiring Defendants to comply with Labor Code § 226(a).

## THIRD CAUSE OF ACTION

### Failure to Compensate for All Hours Worked

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

38.     WILSON hereby re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

39.     Defendants routinely coerced WILSON and several other employees to work while clocked out for lunch without being paid for all hours worked.

40.     The California Labor Code, including but not limited to §§ 204, 223, and IWC Wage Order 4 (8 C.C.R. § 11040), require that employees be paid for all hours worked.

41.     WILSON thus seeks and is entitled to all uncompensated wages, plus interest, and attorneys' fees and costs, under California Labor Code § 218.5, as well as all other legal and equitable relief such as a court may find just and proper, including but not limited to an injunction prohibiting Defendants from requiring unpaid off-the-clock work.

### FOURTH CAUSE OF ACTION
### Late Pay and Waiting Time Penalties

42.     WILSON hereby re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

43.     Labor Code section 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or quits, the wages of such employee shall continue as from the due date thereof at the same rate until paid or until an action therefor is commenced, for not more than 30 days.

44.     More than thirty days have passed since WILSON was discharged from her employment with Defendants.

45.     The final wages that Defendants paid WILSON, and other similarly situated employees, did not include the complete and final wages she was due because of Defendants' failure to fully account for WILSON's regular hours worked and for her missed rest and meal periods.

46.     As a result of Defendants' willful conduct in not paying her regular wages and rest and meal period premiums to which WILSON was entitled, WILSON is entitled to thirty days' worth of wages

11

as penalty wages under Labor Code section 203 together with interest thereon and attorney's fees and costs.

## FIFTH CAUSE OF ACTION
### Unfair Business Practices

47.     WILSON hereby re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

48.     Section 17200 of the California Business and Professions Code – California's Unfair Competition Law – prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices. The foregoing conduct by Defendants, as alleged, constitutes unlawful business actions and practices in violation of § 17200 *et seq*.

49.     Pursuant to Business and Professions Code § 17200 *et seq*., WILSON is entitled to: restitution of the unpaid wages, rest and meal period premiums, and unpaid reimbursements for necessary work-related expenditures, alleged herein that Defendants have improperly withheld and retained.

## SIXTH CAUSE OF ACTION
### Civil Penalties Pursuant to The Labor Code Private Attorneys General Act
### (On behalf of WILSON and other similarly aggrieved employees of Defendants)

50.     WILSON hereby re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

51.     The Labor Code Private Attorneys General Act ("PAGA"), California Labor Code § 2698, *et seq.*, enables a Court to award civil penalties for violations of the Labor Code that, prior to the Act, could be assessed and collected only by the Labor and Workforce Development Agency.

52.     WILSON has provided notice pursuant to California Labor Code § 2699.3, and on June 4, 2018 asked the California Labor and Workforce Development Agency if it intended to investigate alleged Labor Code violations, as set forth in the letter attached hereto as **Exhibit A**. Over thirty (30) days have

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

passed since the postmark date of WILSON's notice to the California Labor Workforce Development Agency, and the agency has not provided notice to WILSON regarding its intention to investigate the alleged violations. As such, pursuant to California Labor Code § 2699.3(a)(2)(A), WILSON has exhausted her notice requirement and seeks civil penalties under California Labor Code § 2698, *et seq.*

53.     Accordingly, on behalf of herself and all other employees who have worked for Defendants the initial Complaint to the trial in this action, WILSON alleges as follows:

54.     Under California Labor Code § 558, described above, Defendants are subject to a civil penalty of, for an initial violation, fifty dollars ($50) for WILSON and each aggrieved employee for each pay period for which the employee was not provided a rest or meal period under Labor Code § 512, as alleged in the First Cause of Action, in addition to an amount sufficient to recover underpaid wages; and, for each subsequent violation, one hundred dollars ($100) for WILSON and each aggrieved employee for each pay period for which the employee was underpaid under Labor Code § 512, as alleged in the First Cause of Action, in addition to an amount sufficient to recover underpaid wages.

55.     Under California Labor Code § 226.3, which provides for civil penalties for violations of the California Labor Code § 226(a) in addition to any other penalty provided by law, Defendants are subject to a civil penalty of two hundred fifty dollars ($250) for WILSON and each aggrieved employee for the first violation, and one thousand dollars ($1,000) for WILSON and each aggrieved employee for each subsequent violation of Labor Code § 226(a) for failure to provide timely, accurate, itemized wage statements, as alleged in the Second Cause of Action.

56.     California Labor Code § 225.5 imposes civil penalties, in addition to any other civil or criminal penalty provided by law, upon every person who unlawfully fails to pay wages due to any employee in violation of, *inter alia*, Labor Code § 223.  Under California Labor Code § 225.5, Defendants are subject to a civil penalty of, for an initial violation, one hundred dollars ($100) for WILSON and each

aggrieved employee for each pay period for which the employees were not compensated for all hours worked, as alleged in the Third Cause of Action, in addition to an amount sufficient to recover such unlawfully deducted wages; and, for each subsequent violation, two hundred dollars ($200), plus 25% of the amount unlawfully withheld for WILSON and other aggrieved employees for each pay period for which the employee was not compensated for all hours worked under Labor Code § 223, as alleged in the Third Cause of Action, in addition to an amount sufficient to recover the unlawfully deducted wages.

57.     Under California Labor Code § 2699(f)(2), described above, Defendants are subject to a civil penalty of one hundred dollars ($100) for WILSON and each aggrieved employee per pay period for the initial violation of Labor Code §§ 201-203 for their failure to pay earned wages upon discharge, as alleged in the Fourth Cause of Action, and two hundred dollars ($200) for WILSON and each aggrieved employee per pay period for each subsequent violation of Labor Code §§ 201-203, as alleged in the Fourth Cause of Action.

58.     Under California Labor Code § 2699(g)(1), Defendants are liable for attorneys' fees and costs with respect to the violations alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, WILSON, prays for relief against Defendants as follows:

A. That Defendants are found to have violated the rest and meal period, itemized wage statement/time records, failure to pay full wages for time worked, and failure to timely pay wages penalty provisions of the California wage laws cited above;

B. That Defendants are found to have failed to maintain accurate payroll records for WILSON as required by the California Labor Code;

C. That Defendants' violations as described above are found to be willful;

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

D. That the Court allow WILSON to represent all similarly aggrieved employees under PAGA and award PAGA penalties under California Labor Code § 2699;

E. For general damages in an amount subject to proof at trial but in an amount not less than $75,000;

F. For unpaid regular wages, and rest and meal period compensation, in amounts according to proof at trial;

G. For waiting time penalties in an amount according to proof at trial;

H. For liquidated damages and penalties where provided by state, and interest thereon, subject to proof at trial;

I. That Defendants be ordered and enjoined to pay restitution to WILSON due to Defendants' unlawful activities, pursuant to California state law cited above;

J. That Defendants further be enjoined to cease and desist from unlawful activities in violation of state laws cited above;

K. That the Court grant declaratory relief stating that Defendants' scheme is unlawful;

L. For an award of reasonable attorneys' fees and costs pursuant to California Labor Code §§ 218.5, 1194, 2802(d), California Code of Civil Procedure § 1021.5, California Government Code section 12965(b), and/or other applicable state laws;

M. For exemplary and punitive damages in an amount according to proof; and

N. For such other relief as the Court may deem just and proper.

WILSON hereby demands a jury trial in this matter.

Date:   October 25, 2018

LAW OFFICES OF ERIC. M. LIGHTMAN

_Eric Lightman_

ERIC M. LIGHTMAN
Attorney for Plaintiff,
TERRI WILSON

15

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## **<u>EXHIBIT A</u>**

# Eric M. Lightman, Esq.
## Attorney at Law

1254 Mission St. ● San Francisco, CA 94103 ● Phone: 415-295-4777● Fax: 415-795-4750● Email: eric.m.lightman@gmail.com

June 4, 2018

California Labor & Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814
(916) 653-9900

RE: Terri Wilson v. Laboratory Corporation of America Holdings, et al.

Dear Sir or Madam:

My office represents the Terri Wilson ("Wilson") in the above-captioned matter concerning claims under California and federal law for unpaid overtime compensation, unpaid meal period pay, denied rest and meal breaks, failure to provide timely, accurate, itemized wage statements, termination in violation of public policy, waiting time penalties, statutory penalties, interest, and attorney's fees and costs against Laboratory Corporation of America Holdings ("Labcorp").

I am writing this letter to the LWDA pursuant to the exhaustion requirements of California Labor Code §§ 2699 and 2699.3, because my client intends to pursue these claims under the Private Attorney General Act ("PAGA") as a possible class action lawsuit. The purpose of my letter is to find out whether LWDA intends to investigate my client's allegations of violations of California Labor Code §§ 201-203, 218.5, 223, 226, 226.3, 510, 512, 517, 1194, 1197, 1198, 2802 Industrial Welfare Commission Wage Order No. 4, Business and Professions Code §17200 et seq., and CCP § 1021.5. The following is a brief summary of my client's allegations against Labcorp.

This is an action for relief from Labcorp's unlawful refusal to pay its phlebotomists appropriate overtime compensation, and to provide them with lawful rest and meal breaks, among other violations of the California Labor Code. Labcorp operates several facilities around California at which it employs phlebotomists to draw blood from patients and to arrange for testing of blood samples. Labcorp also has several contracts with hospitals to perform these services. Labcorp consistently understaffed its facilities, thereby increasing the amount of work expected to be performed by each of its employees. Labcorp implemented a company policy of requiring that employees who were too busy to take lunch had to get authorization from their supervisors in order to miss lunch. If the employee got such authorization, then the employee would be paid a meal penalty of one hour's wages. Labcorp had an informal policy whereby supervisors were routinely unavailable to authorize their employees' requests to work through lunch. Labcorp then used this lack of authorization to deny its employees their missed lunch penalties, claiming that without authorization, the employee would not receive meal penalty wages. Labcorp also instructed phlebotomists who requested authorization to miss lunch periods to indicate on their timecards that they were taking a lunch break despite working through lunch, so as to avoid having to pay them their missed meal penalties. Labcorp also routinely failed to pay Wilson and other phlebotomists premium wages for

missed rest periods, as the facilities were often too busy to take any rest breaks during normal 8-hour shifts.

Based on the foregoing, Wilson alleges the following willful violations by Defendants of California law:

1. Labcorp's payroll policies and procedures required phlebotomists to be subject to the control of Labcorp in excess of eight hours per workday, in excess of forty hours per week, and on the seventh day worked in a single workweek, and Labcorp unlawfully failed to pay its phlebotomists the proper overtime compensation, in violation of IWC Wage Order No. 4 and California Labor Code §§ 510, 1194, and 1198;
2. Labcorp failed to provide to phlebotomists timely, accurate, itemized wage statements including, inter alia, of hours worked, in violation of California Labor Code §§ 226 and 226.3;
3. Labcorp failed to provide phlebotomists with lawful meal or rest periods, or to pay meal period premiums, in violation of IWC Wage Order No. 4 and California Labor Code §§ 226.7 and 512;
4. Labcorp failed to compensate phlebotomists for all hours worked, in violation of IWC Wage Order No. 4 and California Labor Code §§ 221 and 223;
5. Labcorp failed to pay phlebotomists all wages due upon termination, in violation of California Labor Code §§ 201-203; and
6. The foregoing conduct by Labcorp further constitutes unlawful business actions and practices in violation of California Business and Professions Code § 17200 *et seq*.

Thank you for your assistance and cooperation in this matter. Please contact the undersigned if you have any questions. We look forward to your response at your earliest convenience.

Sincerely,

Eric M. Lightman
Attorney for Terri Wilson

cc: (by Certified Mail)
CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Ste 150N, Sacramento, CA 95833
as Registered Agent for Laboratory Corporation of America Holdings

2